IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:09-CT-3183-FL

| | | |
|---|---|---|
| JOSEPH LEE GARDNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| DR. LAND, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before the court on the motions to dismiss pursuant to Federal Rules of

Civil Procedure 12(b)(6) filed by defendants Dr. Eurgia Land ("Dr. Land"), Dr. Rosamuel Dawkins

("Dr. Dawkins"), and Physician's Assistant David Hinds ("Hinds") (DE # 27), and by defendant

George Kenworthy ("Kenworthy") (DE # 30).[1] Plaintiff has not responded in opposition, and the

issues raised now are ripe for adjudication. For the reasons that follow, defendants' motions are

granted. Additionally, following notice to plaintiff, the court on its own initiative dismisses the John

Doe defendants from this action.

## STATEMENT OF THE CASE

Plaintiff, a state inmate, filed this action pursuant to 42 U.S.C. § 1983 on November 9, 2009.

He alleges that defendants acted with deliberate indifference to his serious medical needs in violation

of the Eighth Amendment to the United States Constitution in filing to examine or treat a medical

---

[1] Plaintiff, in his complaint, refers to a doctor named "Dawson" or "Dawkins." The correct name for this defendant is Rosamuel Dawkins. Plaintiff also names "Physician Assistant Hines" as a defendant. The correct name for this defendant is David Hinds. Throughout this order, the court refers to these individuals as "Dr. Dawkins" and "Hinds," respectively.

condition from which plaintiff was suffering, or allow him to see a dermatologist or urologist for care. Plaintiff alleges a supervisor liability claim against Dr. Land. Plaintiff also alleges that Dr. Land, Dr. Dawkins, and Hinds engaged in medical malpractice.

On July 9, 2010, Dr. Land, Dr. Dawkins, and Hinds filed a motion to dismiss, arguing that plaintiff failed to allege a claim upon which relief may be granted. Dr. Dawkins also argues that plaintiff's claim against him is barred by the statute of limitations. These three defendants also argue that plaintiff's negligence claim fails to comply with North Carolina Rules of Civil Procedure 9(j). Finally, they argue that plaintiff has failed to state a claim for punitive damages and for injunctive relief. On July 21, 2010, Kenworthy filed a motion to dismiss, arguing that plaintiff's claims for injunctive relief against him now are moot. Although he was notified of defendants' motions to dismiss, plaintiff failed to file a response.

## STATEMENT OF FACTS

The factual allegations set forth in plaintiff's complaint, viewed in the light most favorable to him, are as follows. In the early or mid 1990s, prison physicians began treating plaintiff for *tinea cruris*.[2] This condition caused plaintiff severe itching, rashes, blistering, and loss of pubic hair. Initially, prison medical care providers attributed his condition to his diabetes. However, plaintiff states that his condition "is now believed to be the herpes disease."

Prison physicians initially treated his *tinea cruris* with Lotrisone, a steroid based medication. Plaintiff states that Lotrisone is known throughout the medical community to cause severe thinning of the skin, as well as muscle loss, tissue loss, and other disfigurement. This treatment continued

---

[2] *Tinea cruris* is a superficial fungal infection of the skin and/or hair located in the groin or perineal area; it is popularly referred to as "jock itch." Dorland's Illustrated Medical Dictionary 1955 (31st ed. 2007).

2

throughout the year 2000, when other prison doctors began substituting the Lotrisone with the generic medications Clotrimazole and Betamenthasone Dipropionate. Plaintiff was given either of these two generic medications until approximately the end of 2007 or the beginning of 2008. According to plaintiff, prison medical staff prescribed these medications without performing any physical examination. Although they occasionally conduct visual examinations, prison medical staff relied entirely upon the records of the previous physicians in continuing the treatment.

In the year 2002, plaintiff began to notice changes in his body and bodily functions in the area of infection.[3] He began to doubt the prison physicians' prescribed treatment for his *tinea cruris*, and raised his concern with prison physicians. Those physicians informed him that the observed changes in his body were merely temporary symptoms and side-effects of his diabetes. Plaintiff states that his doubts were resolved in light of this explanation.

In the year 2004 or 2005, plaintiff began to notice additional changes in his body. Plaintiff states that these additional changes aroused increased concern and suspicion about his condition. Accordingly, plaintiff consulted Dr. Dawkins at Lanesboro Correctional Institution about his condition. Dr. Dawkins explained that the symptoms he was experiencing were only temporary side-effects of his diabetes and medications. Plaintiff states that he accepted Dr. Dawkins' statements as true, but also began to request treatment from a specialist. Dr. Dawkins informed plaintiff that prison officials would not approve his request to see a specialist because it would be too expensive.

In August 2005, plaintiff was transferred from Lanesboro Correctional Institution to Caledonia Correctional Institution ("Caledonia"). Plaintiff states that when he arrived at Caledonia,

---

[3] The specifics of these changes, which are documented in graphic detail by plaintiff in his complaint, are not relevant for present purposes. It is sufficient to note that the changes complained of pertain to plaintiff's external reproductive organs.

3

he put in a sick-call request to get his *tinea cruris* medications re-ordered. In response to his sick-call request, plaintiff saw Dr. Land, who informed him that he would not prescribe Lotrisone, or its medical equivalent, because it caused thinning of the skin. Plaintiff states that this further raised his concerns about his prior medical treatment.

Although he would not prescribe Lotrisone, Dr. Land advised plaintiff to get cornstarch from the kitchen to treat his condition. Plaintiff states that he informed Dr. Land that cornstarch had not been an effective treatment for his condition in the past, but that Dr. Land responded that plaintiff could "take it or leave it." However, Dr. Land did not write an order for the cornstarch, despite his knowledge that such an order was the only way plaintiff could get anything from the kitchen. The subsequent lack of treatment caused plaintiff "mad itch, scratching, rashing, and blistering, a lot of pain, suffering and discomfort."

Plaintiff submitted another sick-call request, and was seen by Hinds, who prescribed Lotrisone medication, or its generic equivalent, without any examination or testing. For the next two-and-one-half years, Hinds prescribed plaintiff these medications under the supervision of Land. Plaintiff then noticed an increase in tissue/muscle loss and disfigurement, as well as other bodily issues. Plaintiff, as a result, submitted another sick-call request, complaining about his problems and requesting care from a dermatologist and urologist. In response, Dr. Land informed plaintiff that he was not going to "waste taxpayers' money on expensive specialist treatment."

Plaintiff then was transferred to Odom Correctional Institution ("Odom"). At Odom, plaintiff requested a refill of his *tinea cruris* medications. Plaintiff was again seen by Hinds, who now refused to re-fill his medications, stating that Dr. Land would not allow any re-fills. Plaintiff states he endured his discomfort for the next month, and then submitted a sick call request to Dr. Land,

4

who refused even to examine plaintiff and also refused to prescribe Lotrisone or its generic equivalent. Dr. Land also again refused plaintiff's requests to see a dermatologist or urologist, or to conduct any testing on plaintiff. Instead, Dr. Land provided plaintiff with a medicated powder.

Plaintiff tried the medicated powder for several weeks, but informed Dr. Land that it was not effective. When Dr. Land next saw plaintiff, he did not discuss plaintiff's difficulty with the medicated powder. Instead, the discussion was limited to plaintiff's diabetes. Plaintiff then filed a grievance requesting adequate medical care. Prison officials responded that plaintiff had to limit the use of Lotrisone type medications because it causes skin atrophy, and informed him that a different cream had been prescribed the previous year.

Based on the foregoing facts, plaintiff asserts that the use of Lotrisone-type medications caused skin thinning, loss of tissue, and bodily disfigurement. He also alleges that the North Carolina Department of Correction maintains policies preventing inmates from receiving adequate medical care and from being referred to a specialist for treatment. Plaintiff alleges that the failure of the various prison physicians, including Dr. Dawkins, Dr. Land, and Physician Assistant Hinds, to examine, treat, or provide care from a dermatologist or urologist resulted in deliberate indifference to his serious medical needs. Finally, plaintiff alleges a failure to supervise claim against Dr. Land and a medical malpractice claim against all defendants.

## DISCUSSION

A.    Standard of Review

A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A claim is stated if the complaint

5

contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) ("The plausibility standard . . . requires the plaintiff to articulate facts, when accepted as true, that show . . . the plausibility of entitlement to relief.") (internal citations and quotation marks omitted).

In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). Nor will the court accept as true "unwarranted inferences, unreasonable conclusions, or arguments." Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615 n.26 (4th Cir. 2009).[4]

B.    Analysis

1.    Deliberate Indifference Claim

Plaintiff alleges that Dr. Dawkins, Dr. Land, and Hinds violated his Eighth Amendment rights because they were deliberately indifferent to his medical needs. To state an Eight Amendment deliberate indifference claim, a plaintiff must establish that a prison official was deliberately indifferent to a serious condition, medical need, or risk of harm. See Short v. Smoot, 436 F.3d 422, 427 (4th Cir. 2006). "[A] plaintiff must show both '(1) a serious deprivation of a basic human need;

---

[4] "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (internal citations and quotation marks omitted). Liberal construction of the pleadings is particularly appropriate where a *pro se* litigant raises a civil rights claim. See Brown v. N.C. Dep't of Corrs., 612 F.3d 720, 722 (4th Cir. 2010). However, there are limits to which the court may go in dealing with such filings, and even liberally construed, a *pro se* complaint must meet the plausibility requirement. See Giarrantano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008); see also Atherton v. D.C. Office of Mayor, 567 F.3d 672, 681-82 (D.C. Cir. 2009).

6

and (2) deliberate indifference to prison conditions on the part of prison officials.'" Strickler v.

Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)).

The first prong is an objective one — the prisoner must show that "the deprivation of [a] basic

human need was objectively 'sufficiently serious' " — while the second prong is subjective — the

prisoner must show that "subjectively 'the officials act[ed] with a sufficiently culpable state of

mind.' " Id. (citations omitted).

Defendants raise three arguments for dismissal. First, they argue that plaintiff has not alleged

that they acted with a sufficiently capable state of mind to satisfy the subjective prong of the

deliberate indifference test. Instead, defendants contend that plaintiff has alleged no more than a

mere medical malpractice claim, which is not actionable under § 1983. Second, they argue that

plaintiff has not identified any compensable injury that resulted from the alleged deliberate

indifference. Finally, Dr. Dawkins argues that plaintiff's claims against him are barred by the statute

of limitations. Because the court agrees that the facts alleged by plaintiff are insufficient to meet the

subjective prong of the deliberate indifference test, it does not reach defendants' other arguments.

To make out a claim for deliberate indifference, plaintiff must demonstrate that defendants

acted with "more than mere negligence but less than malice." Williams v. Benjamin, 77 F.3d 756,

761 (4th Cir. 1996). Plaintiff need not show "acts or omissions [done] for the very purpose of

causing harm or with knowledge that harm will result." See Farmer v. Brennan, 511 U.S. 825, 835

(1994). But he must show that defendants were aware of the facts that would lead to an inference

that a substantial risk of harm exists and must also draw that inference. Id. at 837; see also Shakka

v. Smith, 71 F.3d 162, 166 (4th Cir. 1995) ("[A] prison official must *know of* and *disregard* the

objectively serious condition, medical need, or risk of harm.") (emphasis added).

7

The Supreme Court has stressed that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. 97, 106 (1976). A disagreement between an inmate and a physician regarding the appropriate form of treatment does not state a claim for deliberate indifference. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Instead, "[t]o establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).

Plaintiff has not shown that defendants were deliberately indifferent to the skin thinning, loss of tissue, and bodily disfigurement complained of by plaintiff. Plaintiff alleges that Lotrisone is known in the medical community to cause these symptoms, but the mere fact that doctors prescribed an approved medication with known side-effects does not raise an inference of deliberate indifference. Indeed, plaintiff alleges that Dr. Land took him off Lotrisone because of his side effects, but that the alternative treatment was not effective. Hinds put plaintiff back on Lotrisone for a period, but substituted a medical powder at Dr. Land's direction after the side-effects began to worsen. These allegations do not raise any plausible inference of deliberate indifference; instead, they appear to demonstrate that defendants were making a concerted effort to avoid the injuries complained of by plaintiff.[5] Accordingly, plaintiff's allegations fail to state a deliberate indifference claim, and that cause of action is dismissed.

---

[5] To the extent that plaintiff may be taken as alleging that he was misdiagnosed with *tinea curia* when he was actually suffering from herpes, this allegation is also insufficient to demonstrate a constitutional violation. "At most, [plaintiff] . . . demonstrates that the doctors were negligence in missing the diagnosis. A missed diagnosis, however, does not automatically translated into deliberate indifference." Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998). Here, plaintiff alleges that defendants "knew about the various symptoms . . . and tried to treat them." Id. That they did so incompetently, as alleged by plaintiff, is not sufficient to state a claim.

8

2.    Supervisor Liability Claim

Dr. Land argues that plaintiff failed to state a claim upon which relief may be granted for supervisor liability. A plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994).

Here, plaintiff alleges that Hinds continued to prescribed Lotrisone, either with Dr. Land's approval or his failure to supervise, while knowing the damaging effects of the medication. Plaintiff also alleges that the North Carolina Department of Correction maintains policies preventing inmates from being referred to a specialist for treatment. However, "[t]here is no liability under § 1983 on behalf of a supervisory official where there is no constitutional violation on the part of those supervised." Simba v. Kenworthy, 2008 WL 5636337, at *4 (E.D.N.C. Mar. 20, 2008) (citing Huggins v. Weider, 105 F. App'x 503, 506 (4th Cir. 2004)); cf. Young v. City of Mount Ranier, 238 F.3d 567, 579 (4th Cir. 2001) ("[A] section 1983 failure-to-train claim cannot be maintained against a governmental employer in a case where there is no underlying constitutional violation by the employee."). Because plaintiff has not shown any constitutional violation by Hinds, he has not properly stated a supervisory liability claim against Dr. Land. Accordingly, that cause of action is dismissed.

9

3.    Medical Malpractice Claim

North Carolina imposes substantive legal requirements that a person must follow to pursue a medical malpractice claim. See N.C. R. Civ. P. 9(j). Under North Carolina Rule of Civil Procedure 9(j), a plaintiff's medical malpractice complaint must assert that the medical care has been reviewed by a person who is reasonably expected to qualify (or whom the plaintiff will move to qualify) as an expert witness and who is willing to testify that the medical care received by the plaintiff did not comply with the applicable standard of care. See N.C. R. Civ. P. 9(j)(1), (2). Alternatively, the complaint must allege facts establishing negligence under the common-law doctrine of res ipsa loquitur. See N.C. R. Civ. P. j(3). Failure to comply with Rule 9(j) is grounds for dismissal of a state medical malpractice claim brought in federal court. See, e.g., Estate of Williams-Moore v. Alliance One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 649 (M.D.N.C. 2004); Frazier v. Angel Med. Ctr., 308 F. Supp. 2d 671, 676 (W.D.N.C. 2004); Moore v. Pitt County Mem'l Hosp., 139 F. Supp. 2d 712, 713 (E.D.N.C. 2001).

Plaintiff's complaint fails to allege that he obtained certification from an expert willing to testify that his treating medical personnel did not comply with the applicable standard of care. Further, the doctrine of res ipsa loquitur "is allowed only when the occurrence clearly speaks for itself." Diehl v. Koffer, 140 N.C. App. 375, 378, 536 S.E.2d 359, 362 (2000); see, e.g., Tice v. Hall, 310 N.C. 589, 593, 313 S.E.2d 565, 567 (1984) (surgical sponge left in patient's body); Schaffner v. Cumberland County Hosp. Sys., Inc., 77 N.C. App. 689, 691-93, 336 S.E.2d 116, 118-19 (1985) (patient's hand burned during ear surgery); Hyder v. Weilbaecher, 54 N.C. App. 287, 292, 283 S.E.2d 426, 429 (1981) (stainless steel wire left in patient). The evidence alleged by plaintiff is insufficient to invoke the doctrine of res ipsa loquitur. Because plaintiff fails to meet the

requirements of Rule 9(j), defendants' motion to dismiss plaintiff's state law claim for medical malpractice is granted.

4.      Punitive Damages

Land and Hines argue that plaintiff's claims do not support an award of punitive damages. Punitive damages may be awarded in a § 1983 action under appropriate circumstances to punish violations of constitutional rights. City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 267-268 (1981). Punitive damages may be awarded for "conduct that involves 'reckless or callous indifference to the federally protected rights of others,' as well as for conduct motivated by evil intent." Cooper v. Dyke, 814 F.2d 941, 948 (4th Cir. 1987) (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)). Here, plaintiff has not properly alleged any constitutional violation, and defendants' motion to dismiss plaintiff's claim for punitive damages is accordingly granted.

5.      Injunctive Relief

Defendants argue that plaintiff's request for injunctive relief should be dismissed. Of course, without any constitutional violation the request for injunctive relief will not be allowed to survive. But even if plaintiff had demonstrated a constitutional violation, the court would deny his request for injunctive relief, by which he seeks an order for Kenworthy to arrange for plaintiff to see an urologist and dermatologist. Kenworthy is the Superintendent at Tabor Correctional Institution ("Tabor"), but plaintiff has been transferred from Tabor to Lanesboro Correctional Institution.[6] Likewise, Dr. Land and Hinds treated plaintiff while he was incarcerated at Caledonia and Odom. Transfer without the likelihood that an inmate will be returned to the facility where the alleged conduct occurred moots claims for injunctive or declaratory relief. Williams v. Griffin, 952 F.2d

---

[6] This information is confirmed through publicly available records at http://www.doc.state.nc.us/offenders/.

11

820, 823 (4th Cir. 1991). Plaintiff has not alleged a likelihood to return to the above-stated facilities from which he was transferred. Accordingly, plaintiff's claim for injunctive relief is dismissed.

C.    Dismissal of John Doe Defendants

On July 2, 2010, this court entered an order notifying plaintiff that he failed to provide the court with an address where the John Doe defendants may be served with the summons and complaint. The court allowed plaintiff fourteen (14) days to provide the court with an address for the John Doe defendants. Plaintiff was cautioned that his failure to provide the court with the requested information would result in dismissal without prejudice of his claims against the John Doe defendants. Plaintiff has failed to respond to this court's July 2, 2010 order. Thus, his claims against the John Doe defendants are dismissed without prejudice.

## CONCLUSION

Based upon the foregoing, defendants' motions to dismiss (DE # 27 and 30) are GRANTED. Plaintiff's claims against Dr. Eurgia Land, Dr. Rosamuel Dawkins, Physician's Assistant David Hinds, and George Kenworthy claims are DISMISSED with prejudice. Plaintiff's claims against the John Doe defendants are DISMISSED without prejudice.

SO ORDERED, this the 31st day of January, 2011.

LOUISE W. FLANAGAN
Chief United States District Judge

12